*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *VICTORIA SYMONDS,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )        *No. 2:10-cv-508-NT* |
| | ) |
| *FEDERAL EXPRESS CORPORATION,* | ) |
| | ) |
| *Defendant* | ) |

### RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

The defendant, Federal Express Corporation, moves for summary judgment on all claims in this action alleging employment discrimination. I recommend that the court grant the motion.

## I.  Applicable Legal Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In

1

determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in

which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can lead to serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II.  Factual Background

The statements of material facts submitted by the parties pursuant to Local Rule 56 include the following undisputed material facts.

The plaintiff was employed by the defendant from March 11, 2008, through November 20, 2010. Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ("Defendant's SMF") (Docket No. 21) ¶ 1; PF's Responses to DF's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 31) ¶ 1. She was first assigned to the PM shift at the Portland, Maine, station and reported to Paul Smith, the operations manager. *Id*. ¶ 2. She was employed as a part-time package handler and was assigned to various positions. *Id*. ¶ 3.

Soon after starting to work for the defendant, the plaintiff complained to Smith that a co-

worker, Stephen Rourke, called her "Vicki" rather than her preferred name of "Vic" or "Victoria." *Id.* ¶ 4.[1]  She found it offensive when he did this.  *Id.*  She had told Rourke not to call her "Vicki."  *Id.*  On April 11, 2008, the plaintiff met with Smith and Rourke, and Rourke apologized for calling her "Vicki."  *Id.* ¶ 5.[2]

The plaintiff is an openly gay female.  Plaintiff's Separate Statement of Material Facts ("Plaintiff's SMF") (Docket No. 28) ¶ 4; Defendant's Reply to Plaintiff's Separate Statement of Material Facts ("Defendant's Responsive SMF") (Docket No. 40) ¶ 4.[3]  The plaintiff alleges that, at some point between March 2008 and March 20, 2009, a female co-worker, Robin Patchell, used the term "that's so gay" in her presence, to refer to "how weird something is or how unacceptable something is."  Defendant's SMF ¶ 7; Plaintiff's Responsive SMF.[4]  When the plaintiff confronted Patchell, Patchell became defensive.  *Id.*  Patchell never said anything else that the plaintiff perceived to be related to the plaintiff's sexual preference.  *Id.*  The plaintiff claimed that she complained to management about "homophobic comments made by co-workers."  *Id.* ¶ 8.[5]  She also testified that she did not encounter or report any other comments by co-workers that she perceived as homophobic or related to or derogatory of her sexual

---

[1] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the denial actually goes only to the last sentence in the paragraph, Plaintiff's Responsive SMF ¶ 4, and I have not included that sentence in my recitation of the undisputed material facts.  Because the plaintiff did not respond to the rest of the paragraph, which is supported by the citations given to the summary judgment record, that portion of the paragraph is deemed admitted.

[2] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the only portion of that denial that is responsive is an assertion that "[t]he evidence cited by the defense does not support the fact[.]" Plaintiff's Responsive SMF ¶ 5.  The citations to the record support the paragraph to the extent that it is included here, and the defendant's objection to the plaintiff's response, Defendant's Objections to Plaintiff's Responses to Defendant's Statement of Material Facts ("Defendant's Objections") (Docket No. 42) ¶5, is GRANTED.

[3] The defendant's qualification of this paragraph does not affect the portion reproduced here, which the defendant admitted.  Defendants' Responsive SMF ¶ 4.

[4] The plaintiff's purported qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 7, is not inconsistent with this presentation of the substance of the paragraph.

[5] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the denial is not responsive to the facts stated in this paragraph.  Plaintiff's Responsive SMF ¶ 8.  The defendant's objection to the plaintiff's response to this paragraph, Defendant's Objections ¶ 8, is GRANTED, and, because the citations given to the summary judgment record support the paragraph, it is deemed admitted.

preference. *Id.*

In September 2008, Chandra Cosgriff, the plaintiff's partner, came straight from her second job to her job at FedEx on a hot day. Plaintiff's SMF ¶¶ 4-5; Defendant's Responsive SMF ¶¶ 4-5.[6] The plaintiff reported to Hartshorne that FedEx employees Dave Crowell, Terry Toliver, and Steve Rourke made remarks about the way Cosgriff smelled, which the plaintiff found offensive. *Id.* ¶¶ 5-6.[7] The plaintiff told Hartshorne that he needed to address the matter with Rourke. *Id.* ¶ 6. Hartshorne did not meet with Cosgriff or take a statement from the plaintiff. *Id.* ¶ 7.[8] The defendant did not take any disciplinary action against Rourke. *Id.* ¶ 8.[9]

On March 17, 2009, the plaintiff was involved in an incident with Patchell regarding documents that remained to be scanned. Defendant's SMF ¶ 9; Plaintiff's Responsive SMF ¶ 9. The plaintiff accused Patchell of missing the documents, and Patchell responded that she was not responsible for scanning the documents. *Id.* Patchell submitted a written complaint to Smith about the plaintiff's behavior during this incident. *Id.* ¶ 10.[10] The complaint stated that the plaintiff had spoken to Patchell in a condescending and unprofessional manner and outlined other instances of what she characterized as the plaintiff's inappropriate behavior toward her co-workers. *Id.*

Smith obtained statements from the plaintiff and other employees who witnessed the confrontation between Patchell and the plaintiff. *Id.* ¶ 11. On March 18, 2009, Smith issued a

---

[6] The defendant's qualifications of these two paragraphs of the plaintiff's statement of material facts, Defendant's Responsive SMF ¶¶ 4-5, do not affect the facts repeated here.

[7] The defendant's qualifications of these two paragraphs of the plaintiff's statement of material facts, Defendant's Responsive SMF ¶¶ 5-6, do not affect the facts repeated here.

[8] The defendant's qualification of this paragraph of the plaintiff's statement of material facts, Defendant's Responsive SMF ¶ 7, does not affect the facts repeated here.

[9] The defendant's qualification of this paragraph of the plaintiff's statement of material facts, Defendant's Responsive SMF ¶ 8, does not affect the facts repeated here.

[10] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 10, is not responsive, and the defendant's objection to her response, Defendant's Objections ¶ 10, is GRANTED. Because the citations given to the summary judgment record support the paragraph, it is deemed admitted.

warning letter to the plaintiff for violation of the defendant's Acceptable Conduct Policy in connection with the incident. *Id.* ¶ 12.[11] Also on March 18, 2009, the plaintiff submitted a "counter-complaint" to the Patchell complaint, stating that, on different occasions, Patchell had snapped at her and created "a hostile work environment," although she did not mention the "that's so gay" remark. *Id.* ¶ 13.[12] Patchell was not disciplined as a result of the incident. Plaintiff's SMF ¶ 19; Defendant's Responsive SMF ¶ 19.

On March 19, 2009, the plaintiff began the process of filing an internal appeal of the warning letter. Defendant's SMF ¶ 14; Plaintiff's Responsive SMF ¶ 14. Vinnie Hartshorne, the plaintiff's senior manager, approached her as she was completing the form and talked with her about what had occurred. *Id.* The plaintiff informed Hartshorne that she had approached Patchell and made amends for anything that she did to offend her. *Id.* ¶ 15.[13] Hartshorne offered the plaintiff an opportunity to switch to the AM shift, which the plaintiff accepted without objection. *Id.* ¶ 16. On April 8, 2009, Hartshorne removed the warning letter from the plaintiff's employment record and replaced it with a non-disciplinary online counseling ("OLCC"). *Id.* ¶ 19.

The plaintiff started working on the AM shift on March 20, 2009, reporting to operations manager Matthew Whitaker. *Id.* ¶ 17. She was able to work more hours with her painting business when she was working the AM shift than when she was working the PM shift. *Id.* ¶ 18. Shortly after switching to the AM shift, the plaintiff approached a co-worker, Maggie DeZenzo, with suggestions about how she could work a little smarter. *Id.* ¶ 20. DeZenzo took offense and

---

[11] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 12, is not responsive, and the defendant's objection to her response, Defendant's Objections ¶ 12, is GRANTED. Because the citations given to the summary judgment record support the paragraph, it is deemed admitted.

[12] The plaintiff does not respond to this paragraph of the defendant's statement of material facts, which is supported by the citations given to the summary judgment record and accordingly is deemed admitted.

[13] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 15, does not address that portion of the paragraph that is included here.

submitted a statement to Whitaker about the plaintiff's "aggressive and bossy" behavior. *Id.*

The plaintiff claims that DeZenzo "verbally attacked" her for "defying [DeZenzo's] authority." *Id.* ¶ 21. She came to believe that DeZenzo was threatened by the plaintiff's working the AM shift and taking hours that DeZenzo needed for her "retirement bonus." *Id.* She believes that another co-worker, Debra Walton, overheard the plaintiff's conversation with another employee about the Maine gay marriage bill, following which the plaintiff describes Walton as condescending and hostile toward her. *Id.* ¶ 22. She does not know whether Walton actually was listening to the conversation, and Walton never mentioned it to her. *Id.*

The plaintiff claims that she verbally reported her theory about Walton overhearing her conversation to Whitaker as a possible cause of the tension between her and Walton. *Id.* ¶ 23. On July 28, 2009, the plaintiff was involved in a confrontation with Walton over a package tracking mechanism called a CONS tag. *Id.* ¶ 24.[14] The plaintiff claims that Walton took aggressive and mean tone when explaining an applicable new procedure. *Id.* Walton submitted a written complaint to Whitaker about the plaintiff's conduct toward her during this exchange, during which she stated that she was very embarrassed by the plaintiff's comments in front of other employees and customers. *Id.* ¶ 25.[15] On July 29, 2009, Whitaker suspended the plaintiff with pay pending an investigation into the encounter. *Id.* ¶ 26.[16] To investigate the incident, Whitaker obtained statements from the plaintiff and other employees who witnessed the

---

[14] The plaintiff's purported denial of this paragraph, Plaintiff's Responsive SMF ¶ 24, is not responsive in large part. Because this portion of the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted. The portions of the paragraph actually denied by the plaintiff are not included here.

[15] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 25, is not responsive, and the defendant's objection to the plaintiff's response, Defendant's Objections ¶ 25, is GRANTED. Those portions of the paragraph included here are deemed admitted, as they are supported by the citations given to the summary judgment record.

[16] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 26, is not responsive, and the defendant's objection to the plaintiff's response, Defendant's Objections ¶ 26, is GRANTED. Because the paragraph is supported by the citations given to the summary judgment record, the paragraph is deemed admitted.

confrontation. *Id.* ¶ 27.[17]

On July 30, 2009, after completing his investigation, Whitaker issued a warning letter to the plaintiff for violation of the Acceptable Conduct Policy for the July 28 incident. *Id.* ¶ 28.[18] Following receipt of the warning letter, the plaintiff took a week of vacation and returned to work on August 7, 2009. *Id.* ¶ 29.

In July 2009, the plaintiff claims that she observed and reported scratches on her vehicle to management. *Id.* ¶ 30. She never witnesses anyone scratching her vehicle, but suspected that a co-worker, Mike Bouchard, was responsible because she saw him in the vicinity of her vehicle on a few occasions. *Id.* An officer from FedEx Security, Joe Gulley, went to the station to investigate the scratches on the plaintiff's vehicle. *Id.* ¶ 31.[19] Gulley reported to Hartshorne that he did not observe any scratches on the vehicle. *Id.* ¶ 32.[20]

Hartshorne offered to allow the plaintiff to park her vehicle in the customer parking area, and she accepted. *Id.* ¶ 33.[21] The plaintiff installed a spy cam in an effort to catch whoever was scratching it, but never obtained any evidence of anyone at FedEx scratching her vehicle. *Id.* ¶ 34.[22] The plaintiff claims that the alleged appearance of scratches on her vehicle, although she does not know who made them, was in retaliation for her complaint against John Harvey, a co-worker. *Id.* ¶ 35. The plaintiff claims that one day she found spit on the passenger side door of

---

[17] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 27, is not inconsistent with what appears in the text.

[18] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 28, is not responsive, and the defendant's objection, Defendant's Objections ¶ 28, is GRANTED. Because the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

[19] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 31, is not supported by the citation given to the summary judgment record, and the defendant's objection to the response, Defendant's Objections ¶ 31, is GRANTED. The paragraph is deemed admitted.

[20] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 32, is not responsive, and the defendant's objection, Defendant's Objections ¶ 32, is GRANTED. Because the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

[21] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 33, is not inconsistent with the fact stated here.

[22] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 34, is not inconsistent with the facts stated here.

her vehicle; she did not report this to FedEx management.  *Id.* ¶ 36.[23]

On August 7, 2009, the plaintiff claims that co-workers Harvey and Rich Penny "snickered" at her, and Harvey said, "Watch out, she might blow."  *Id.* ¶ 38.[24]  The plaintiff claims that later the same day Harvey told her that she would "explode from the inside out before all is said and done."  *Id.*  On August 12, 2009, the plaintiff claims that Harvey said, "She's gonna explode," as she struggled to scan boxes during the package sort.  *Id.* ¶ 39.  Harvey allegedly made gestures of marking on the wall as if to keep score and zipping his mouth, and the plaintiff found the gestures to be provoking and offensive.  *Id.*  She told Harvey that she would be reporting the incident to Whitaker and Hartshorne.  *Id.*  She felt that Harvey was disrespecting her and was implying that she was unstable.  *Id.*

The plaintiff also claims that Harvey made the comment, "Ah, such a Peyton Place."  *Id.* ¶ 40.  The plaintiff did not know what he meant by that, but responded "Yes, but just for a few," believing that the term meant that there were favorites.  *Id.*  She claims that Harvey also said, "It's not in your nature to be quiet."  *Id.*  She was offended by this, because Harvey did not know her "nature."  *Id.*  On August 12, 2009, the plaintiff submitted a written statement to Whitaker complaining of what she perceived as insulting and harassing behavior directed toward her by Harvey.  *Id.* ¶ 37.  She told Whitaker that she was "disrespected" and was "being harassed" by Harvey's statements.  *Id.* ¶ 41.

Hartshorne called Harvey in to question him about the plaintiff's allegations and to take a

---

[23] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 36, is not inconsistent with the facts stated here.
[24] The plaintiff's denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 38, responds to only a portion of that paragraph, which is not included in my factual summary.  Because the remaining portions of the paragraph are supported by the citations given to the summary judgment record, they are deemed admitted.

written statement from him.  *Id*. ¶ 42.[25]  Hartshorne also questioned another employee or employees who the plaintiff claimed were present and witnessed the exchange, but heard nothing that supported the plaintiff's allegations.  *Id*.  Harvey admitted making the statement, "She's gonna blow," but maintained that the statement was not malicious and was made in a spirit of concern for the level of stress that the plaintiff was displaying.  *Id*. ¶ 43.[26]  Harvey submitted a statement to Hartshorne and other members of management dated August 12, 2009, in which he asserted that the plaintiff had made threats against the defendant and Harvey personally.  *Id*. ¶ 44.[27]  Harvey also requested to be moved to another position away from the plaintiff to "alleviate the uncomfortable and hostile environment."  *Id*.

Management moved Harvey to a different position away from direct contact with the plaintiff.  *Id*. ¶ 45.[28]  On August 13, 2009, Whitaker offered the plaintiff an internal EEO packet to fill out in response to her complaint of harassment against Harvey.  *Id*. ¶ 46.[29]  Under the defendant's Guaranteed Fair Treatment Procedure ("GFTP") and Internal EEO (IEEO) Complaint Process, when an employee complains of discrimination or harassment, the manager gives the employee an IEEO "employee packet," which includes an Employee Information Statement ("EIS") that the employee is asked to complete; this is typically the first step in

---

[25] The plaintiff's denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 42, addresses only the first phrase of the first sentence, and, to the extent that it states an opinion about the quality of Hartshorne's investigation, the defendant's objection, Defendant's Objections ¶ 42, is GRANTED.  I do not include in this recitation of the facts the information included in the first phrase of the first sentence.

[26] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 43, is not responsive, and the defendant's objection to the plaintiff's response, Defendant's Objections ¶ 43, is GRANTED.  Because the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

[27] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 44, is not responsive, and the defendant's objection to the plaintiff's response, Defendant's Objections ¶ 44, is GRANTED.  Because the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

[28] The plaintiff's denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 45, addresses only a single word in the paragraph, which I have not included here.

[29] The plaintiff's denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 46, does not address this portion of the paragraph, which is supported by the citations given and is deemed admitted.

initiating an IEEO investigation. *Id.* ¶ 47.[30]

If an EIS is not obtained, but the complainant has otherwise raised claims of discrimination or harassment, FedEx management and/or HR personnel are nonetheless required to submit the employee's complaint and supporting documentation to the HR Compliance Department in Memphis. *Id.* ¶ 48.[31] HR Compliance submits the information to the FedEx legal department, which approves or denies the initiation of an IEEO investigation. *Id.* Prior to the resolution of any pending IEEO investigation, "an employee may not be involuntarily transferred, reassigned, or subjected to any punitive action without concurrence of the matrix [sic] HR management, HR Compliance and the Legal Department." *Id.* ¶ 49.

The plaintiff did not complete the EIS, because she did not want an investigation of the matter. *Id.* ¶ 50.[32]

On August 25, 2009, the plaintiff complained to operations manager Bob McLaughlin that Harvey was loading packages on the belt incorrectly by failing to orient the package labels properly for scanning. *Id.* ¶ 51.[33] On August 27, 2009, the plaintiff made the same complaint to Hartshorne. *Id.* She believed that Harvey was not performing his job correctly and was making her job difficult. *Id.* She claims that this was an act of retaliation. *Id.* ¶ 52. She believes that he was retaliating because she had caused him to be moved from the box scan position to the offload position. *Id.* ¶ 53.

---

[30] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 47, does not address these sentences in the paragraph, which is supported by the citations given to the summary judgment record and is deemed admitted.

[31] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 48, does not address the substance of the paragraph, which is supported by the citations given to the summary judgment record and deemed admitted.

[32] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 50, is more in the nature of a qualification, and does not address the substance of the paragraph, which is deemed admitted.

[33] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 51, addresses only the final sentence of the paragraph. I do not include that sentence in my factual summary. Because the remaining sentences of the paragraph are supported by the citation given to the summary judgment record, they are deemed admitted.

On September 3, 2009, Hartshorne and Perry Jenkins, a human resources advisor, conducted a meeting in the station break room to review proper package handling with sort personnel. *Id.* ¶ 54. The plaintiff attended the meeting. *Id.* She alleges that Hartshorne identified her during the meeting as the individual who was complaining about the sort, even though she did not note this in her written notes and statements about the meeting. *Id.* Her notes state, "Vinnie began with receiving complaints from several people about different people." *Id.* She claims that Jenkins stared at her with "squinting eyes" throughout the meeting. *Id.* Hartshorne and Jenkins dispute that anyone was singled out or identified during the meeting as someone who had complained. *Id.* ¶ 55.[34]

Following the September 3, 2009, meeting, Whitaker asked the plaintiff to come to his office and speak with Jenkins. *Id.* ¶ 56. At this meeting, the plaintiff expressed concern about a double standard with regard to discipline. *Id.* She said that she was suspended for calling Walton "a piece of work," but Harvey was not disciplined when he said that the plaintiff was "gonna blow," which the plaintiff believed was worse behavior. *Id.* Although the plaintiff refused to complete an EIS, following this meeting, Jenkins submitted the plaintiff's complaint to HR Compliance, and the FedEx legal department opened an IEEO investigation. *Id.* ¶ 57. The Boston District Director, Robert McKinley, assigned Jenkins and David Hurley, a senior manager from the FedEx station in Randolph, Massachusetts, to conduct an on-site investigation. *Id.* ¶ 58.[35] The investigation included interviewing the plaintiff, management, and co-workers

---

[34] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 55, is more appropriately characterized as a qualification. It does not deny the facts stated here, and, because those facts are supported by the citations given to the summary judgment record, the stated facts are deemed admitted.

[35] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 58, is more appropriately characterized as a qualification, except where it expresses an opinion, as to which the defendant's objection, Defendant's Objections ¶ 58, is GRANTED. The purported denial is not responsive to the portions of paragraph 58 set forth here, and the citations given to the summary judgment record support those portions, so those portions are deemed admitted.

who had given statements or were otherwise identified as witnesses to the incidents prompting the plaintiff's complaint. *Id.*

Hurley traveled to the plaintiff's station on September 15, 2009, and Jenkins joined him the following day. *Id.* ¶ 59.[36] They interviewed the plaintiff, her managers, and several co-workers who had been identified as witnesses. *Id.* The plaintiff said that she met with Jenkins and Hurley for approximately an hour and a half, during which they discussed the incident with Harvey, and she told them about the poor package handling, which she claimed was retaliatory. *Id.* ¶ 60. She also told them that her complaints about this conduct had gone unanswered, that she was observing daily scratches on her truck, and that litter was left on the floor in the area where she had to set up after the sort. *Id.* She also complained about the fact that her co-workers knew that she had received a letter of warning. Plaintiff's SMF ¶ 72; Defendant's Responsive SMF ¶ 72. It is a violation of FedEx policy for management to disclose to co-workers than an employee has received a letter of reprimand. *Id.* ¶ 75.

Some co-workers who were interviewed described the plaintiff as very aggressive and demeaning, rude, and angry. Defendant's SMF ¶ 61; Plaintiff's Responsive SMF ¶ 61.[37] Many reported her use of derogatory profanity directed at others. *Id.* Most reported that they were guarded in their contact with her, because they wanted to avoid conflicts. *Id.*

The plaintiff claims that on September 23, 2009, she was discussing with a co-worker a problem she was having with malfunctioning scanning equipment when another co-worker, Alex Elston, said, "It's a conspiracy." *Id.* ¶ 62. The plaintiff claims that Elston had been hostile

---

[36] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 59, is not responsive, and the defendant's objection to the plaintiff's response, Defendant's Objections ¶ 59, is GRANTED. The citations given to the summary judgment record support the paragraph, which is deemed admitted.

[37] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 61, is not supported by the citation given to her own deposition. From all that appears, she was not present during these interviews and thus cannot testify to what was said.

toward her since the break room meeting and took this opportunity to say something to her. *Id*. The plaintiff told Elston that what he said to her was "a conspiracy," meaning that his attitude and hostility toward her was a conspiracy. *Id*. She alleges that Elston was hostile and unprofessional toward her in retaliation for her complaint against Harvey. *Id*. ¶ 63. She says that Elston's "tone was hostile," that he "spoke at" her, not "to" her, and would look at her struggling with boxes coming down the belt in disarray and "was just hostile." *Id*. She claims that once, when she accused Elston of pushing boxes off the belt and onto the floor, he responded, "We aim to please," which she saw as retaliatory conduct. *Id*. ¶ 64.

The plaintiff requested that Whitaker "mediate" a meeting between her and Elson, because she did not know the source of Elston's animosity, but the meeting never occurred. *Id*. ¶ 65.

On September 23, 2009, the plaintiff noticed that a co-worker, Linda Langone, suddenly parked next to her vehicle, where the plaintiff had never seen her park before. *Id*. ¶ 66. She alleges that she was afraid that Langone would accuse her of vandalizing Langone's truck. *Id*. Also on September 23, 2009, the plaintiff claims that Harvey pushed six boxes off the belt and onto the floor on the plaintiff's side. *Id*. ¶ 67. She had to pick up the packages. *Id*.

The plaintiff complained that co-workers were leaving strips of paper from the road scan guns lying around, rather than putting them in the trash cans. *Id*. ¶ 68. She claims that this was retaliatory. *Id*. She claims that a co-worker, Tom Harris, retaliated against here by leaving list litter on the floor after being asked not to do so. *Id*. She believes that this was retaliatory because Harris is good friends with Harvey, which is "common knowledge." *Id*. ¶ 69.

On October 27, 2009, the plaintiff states that she "played a small prank" and put strips of

waste paper on the front seat of Harris's company vehicle. *Id*. ¶ 70.[38] She claims that for weeks prior to this, she had complained to Whitaker about employees leaving trash on the floor. *Id.* Harris was very offended and accused another employee of putting the trash in his truck. *Id*. The plaintiff admitted to Harris and Whitaker that she had done it, and she says that she told Harris that maybe he could "find the trash can from now on." *Id*.

Harris submitted a statement to Whitaker describing the trash incident, and claimed during his interview with McKinley for the internal EEO investigation that, after admitting she had put the trash in his company vehicle, the plaintiff said, "Clean up your f--king mess after sort." *Id*. ¶ 71.[39] Harris also stated that a few days later, the plaintiff singled him out in the clock-in room, repeating in a sarcastic tone, "Gooood morningggg, Tommy" and then laying her hand on his arm and asking, "Oh, Tommy, are you ignoring me or trying to avoid me?" *Id*. He complained that he was very uncomfortable with the plaintiff's sudden interest in him and felt that she had gone out of her way to make him feel uncomfortable. *Id*. He requested that he have limited contact with the plaintiff, and that any necessary interaction be conducted only with management oversight. *Id*.

On November 17, 2009, McKinley sent a letter to the plaintiff advising her that the investigation of her complaint against Harvey was closed, and that no policy violations were found. *Id*. ¶ 72.[40] The plaintiff claims that the defendant's management retaliated against her when they failed to discipline employees whom she accused of retaliation. *Id*. ¶ 73.

---

[38] The plaintiff's denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 70, denies only the date stated in that paragraph. I have used the plaintiff's date.

[39] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 71, is not responsive, and the defendant's objection to the plaintiff's response, Defendant's Objections ¶ 71, is GRANTED. Because the substance of the paragraph is supported by the citations given to the summary judgment record, the paragraph is deemed admitted.

[40] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 72, addresses only a phrase that is not included here. Because the remainder of the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

On December 4, 2009, the plaintiff alleges that she overheard a conversation among some dock workers in which she heard them use the term "vicious pit boss." *Id.* ¶ 74. She believes that the workers were talking about her. *Id.* Also on that day, Whitaker approached the plaintiff and asked her to provide a statement regarding the trash incident. *Id.* ¶ 75.[41] The plaintiff initially refused to provide a statement because she felt it was a "double standard" that Harris was allowed to make a complaint so long after the incident happened. *Id.* She became very angry. *Id.* ¶ 76.[42] She describes her outburst at the time as unprofessional, and she was told by Whitaker that she would be written up for it. *Id.*

The plaintiff decided to write a statement regarding the Harris incident, then returned to the station later that day, asking to take her statement back in order to work on it over the weekend. *Id.* ¶ 78. She told Whitaker that she would give it to him first thing on Monday. *Id.* She called in sick on Monday. *Id.*

On December 9, 2009, Hartshorne suspended the plaintiff with pay pending an investigation into the incident with Whitaker and the plaintiff's possible violation of FedEx's Acceptable Conduct Policy 2-5. *Id.* ¶ 79. Numerous employees submitted written statements to

---

[41] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 75, addresses only two portions of the paragraph, neither of which appears here. Because the remainder of the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

[42] The portions of paragraph 76 of the defendant's statement of material facts which are denied by the plaintiff, Plaintiff's Responsive SMF ¶ 76, are not repeated here. However, I agree with the defendant, Defendant's Objections ¶ 76, that the plaintiff admitted in the cited passage from her deposition that she directed profanities towards Whitaker during this conversation, and that she became loud, Plaintiff's Dep. at 114-16; and that her affidavit, which is cited as the support for her denial of this fact in her response to paragraph 76 of the defendant's statement of material facts, Affidavit of Victoria Symonds ("Plaintiff's Aff.") (Docket No. 29) ¶ 6, directly contradicts her deposition testimony on this point, without providing any explanation for the change. Under these circumstances, the later statement will not be considered by the court. *Colantuoni v. Alfred Calcagni Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). The text here repeats only those portions of the paragraph to which the plaintiff did not respond, because they are supported by the citations given to the summary judgment record and thus deemed admitted.

Hartshorne about the plaintiff's outburst. *Id.* ¶ 80.[43]  On December 14, 2009, Hartshorne issued a warning letter to the plaintiff for violation of Policy 2-5 in the December 4, 2009, incident with Whitaker. *Id.* ¶ 81.

On December 7, 2009, the plaintiff sent a letter identified as a "formal complaint" to Regional Vice President Tom Doherty. *Id.* ¶ 82.[44]  In the letter, the plaintiff raised previous and new allegations of co-worker harassment and hostile work environment, and complained that Whitaker was retaliating against her by asking for her statement weeks after the Harris incident. *Id.* The plaintiff explains what she meant by the term "hostile work environment" as "Just it was difficult for me to show up to work every day wondering who is going to treat me with disrespect and not be disciplined, who was going to, you know, retaliate and not be disciplined. It was hostile. It was un – it was unsafe." *Id.* ¶ 83.[45]  The plaintiff states that she felt "unsafe" as a result of "people's false accusations," her truck being "violated and vandalized," people making her job more difficult, and management's failure to take her reports of these events seriously. *Id.* ¶ 84.[46]

On January 18, 2010, the defendant once again initiated an internal EEO investigation, this time of the plaintiff's complaints in her letter to Doherty. *Id.* ¶ 85.

On January 11, 2010, the plaintiff was driving her personal vehicle in Portland, Maine,

---

[43] The plaintiff objects to this paragraph of the defendant's statement of material facts on the grounds that it "is based upon the Affidavit of Mr. Hartshorne who was not present during the conversation." Plaintiff's Responsive SMF ¶ 80. However, the sentence from this paragraph reproduced in the text here has nothing to do with what happened during the conversation between the plaintiff and Whitaker. And Hartshorne is certainly capable of testifying about what was submitted to him by other employees. The objection is OVERRULED. To the extent that the plaintiff's response includes a denial of the paragraph, it is not responsive, and the defendant's objection to that response, Defendant's Objections ¶ 80, is GRANTED.

[44] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 82, does not require any change in the statements made in the paragraph and repeated here.

[45] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 83, is not responsive and does not require any change in the statements made in the paragraph and repeated here.

[46] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 84, is not responsive and does not require any change in the statements made in the paragraph and repeated here.

when she saw a co-worker, Rich Libby, driving his FedEx van on the same street. *Id*. ¶ 86.[47]

The plaintiff was driving in the left land when Libby opened his door and spat onto the plaintiff's

right front fender. *Id*. Both drivers changed lanes and the plaintiff approached him on the right.

*Id*. Libby leaned down and gave the plaintiff a peace sign. *Id*. Prior to this incident the plaintiff

had no conflict with Libby. *Id*

Libby admitted spitting out his door, but denied having done so purposely toward the

plaintiff's vehicle. *Id*. ¶ 87.[48] Libby stated that he did not see the plaintiff until she pulled up

beside him on the right. *Id*.

The plaintiff filed a charge of discrimination with the Maine Human Rights Commission

dated January 18, 2010, alleging discrimination on the basis of sex, sexual orientation, and

whistleblower retaliation. *Id*. ¶ 88.[49] On February 7 and 8, 2010, McKinley and HR Advisor

Edward Geary went to the plaintiff's station and interviewed her, her managers, and at least 10

co-workers. *Id*. ¶ 89.[50] During an interview with McKinley, the plaintiff alleged that Harvey

whistled offensive melodies such as "Ding Dong the Witch is Dead," "The Bitch is Back," and

"Na Na Na Na Hey Good-bye" in her presence. *Id*. ¶ 90.

The majority of the witnesses interviewed by McKinley and Geary indicated that the

plaintiff was not harassed or retaliated against, that her workplace confrontations were the result

of her own conduct, and that, due to her rude and aggressive manner, co-workers actively

---

[47] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 86, denies only one fact in the paragraph. The rest of the paragraph is supported by the citations given to the summary judgment record and accordingly is deemed admitted. I note that the defendant's objection is correct in stating that the denial mischaracterizes the cited deposition testimony, Defendant's Objections ¶ 86, but it is not necessary at this time to include the denied fact as one that would be material.

[48] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 87, is not responsive, and the defendant's objection to the plaintiff's response is GRANTED. Because the citation given to the summary judgment record supports the paragraph, it is deemed admitted.

[49] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 88, requires no change in the factual statement made here.

[50] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 89, requires no change in the factual statement made here.

avoided her.  *Id.* ¶ 91.[51]  McKinley and Geary interviewed one employee, Shari Lyne McDonough, with whom the plaintiff worked at the end of the belt, who spoke highly of the plaintiff's work habits and their working relationship.  *Id.* ¶ 92.[52]  McDonough stated that she believed people treated the plaintiff "differently."  *Id.*

On March 17, 2010, the defendant closed its internal EEO investigation of the plaintiff's allegations in her letter to Doherty, concluding that no EEO violations had occurred.  *Id.* ¶ 93.  Whitaker received an OLCC due to his failure to follow established disciplinary procedures by allowing the plaintiff to take back the statement she had submitted regarding the Harris matter.  *Id.*  The defendant was notified of the plaintiff's Maine Human Rights Commission charge on March 24, 2010.  *Id.* ¶ 94.  During January to March 2010, the defendant received at least three written complaints from the plaintiff's co-workers.  *Id.* ¶ 95.[53]

On March 1, 2010, the plaintiff received a pay raise.  *Id.* ¶ 97.

On March 10, 2010, Elston reported to Whitaker that the plaintiff had walked into him, striking his side, when there was no apparent reason for the plaintiff to walk that close to him.  *Id.* ¶ 98.[54]  On March 16, 2010, the plaintiff's co-worker, Scott Turcotte, submitted a statement to Hartshorne supporting Elston's report of March 10, and adding the allegation that the plaintiff

---

[51] The plaintiff objects to this paragraph of the defendant's statement of material facts as conclusory and hearsay, Plaintiff's Responsive SMF ¶ 91; however, it is not offered for the truth of the matter asserted, but rather to show the information which the defendant had received, and it is not conclusory in any manner that would make it inadmissible.  The objection is OVERRULED.  The plaintiff also purports to deny the paragraph, *id.*, but the denial is not responsive, and the defendant's objection on that basis, Defendant's Objections ¶ 91, is GRANTED.  The paragraph is supported by the citations given to the summary judgment record and is deemed admitted.

[52] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 92, addresses only a portion of the final sentence of the paragraph.  I do not include that portion of the paragraph in the text.  The remainder of the paragraph is supported by the citations given to the summary judgment record and is deemed admitted.

[53] The plaintiff's denial of this paragraph of the defendant's statement of material facts disputes the number of complaints received, Plaintiff's Responsive SMF ¶ 95, and I have used her number.

[54] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 98, is not responsive, and the defendant's objection, Defendant's Objections ¶ 98, is GRANTED.  Because the citations given to the summary judgment record support the paragraph, it is deemed admitted.

had walked past him just minutes before and said, "Alex just needs to f—in grow up." *Id.* ¶ 99.[55] Turcotte also reported that about a month earlier the plaintiff had cut him off in the parking lot, come up to his window, and accused him of vandalizing her vehicle. *Id.* When Turcotte denied it, the plaintiff told him he was "full of s—t." *Id.*

On March 11, 2010, Harvey submitted a statement to operations manager Tony Farides, reporting that the plaintiff had shown up earlier than her regularly scheduled hours and apparently followed him around the station, staring at him. *Id.* ¶ 100.[56] Harvey stated that it was an uncomfortable situation and asked that management inform him whenever the plaintiff's work schedule called for her to arrive before other employees, to make sure that he was not alone in the building with her. *Id.*

On March 26, 2010, a co-worker, Diane King, submitted a statement to Hartshorne complaining that the plaintiff "talked down to her" while they were working together. *Id.* ¶ 101.[57] King stated that she refused to work with the plaintiff in the future. *Id.*

On April 2, 2010, the plaintiff spoke with her supervisor about her concern that Walton was setting her up for missing scans. Plaintiff's SMF ¶ 128; Defendant's Responsive SMF ¶ 128.[58]

The plaintiff submitted a statement to Whitaker claiming that a co-worker, Mike

---

[55] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 99, is not responsive, and the defendant's objection to the response, Defendant's Objections ¶ 99, is GRANTED. Because the citations given to the summary judgment record support the paragraph, it is deemed admitted.

[56] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 100, is not responsive, and the defendant's objection to the response, Defendant's Objections ¶ 100, is GRANTED. Because the citations given to the summary judgment record support the paragraph, it is deemed admitted.

[57] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 101, is not responsive, and the defendant's objection to the response, Defendant's Objections ¶ 101, is GRANTED. Because the citations given to the summary judgment record support the paragraph, it is deemed admitted.

[58] The defendant's qualification of this paragraph, Defendant's Responsive SMF ¶ 128, is not inconsistent with this factual statement.

Bouchard, slammed a door on her heel on April 9, 2010. Defendant's SMF ¶ 102; Plaintiff's Responsive SMF ¶ 102.[59] Later that day, she said, Bouchard "walked very close" to her and slammed the door very hard while looking at her. *Id*. On April 15, 2010, the plaintiff claims that she was intimidated by Bouchard and another co-worker, Rich Penny. *Id*. ¶ 103.[60] All three of them approached a doorway at the same time, and the plaintiff squeezed between them and said, "Excuse me." *Id*. Penny said that the plaintiff ran over them. *Id*. The plaintiff claims that Bouchard and Penny walked into her in retaliation for her past complaints. *Id*. ¶ 104.

Whitaker asked the plaintiff to provide a statement to document the incident with Bouchard and Penny. *Id*. ¶ 105. The plaintiff went into Whitaker's office to look for a pen and pulled Bouchard and Penny's statements from Whitaker's desk drawer. *Id*. She was disappointed that Whitaker took their statements before he took hers. *Id*. None of the parties involved were disciplined for this incident. *Id*. ¶ 106.

On April 15, 2010, the plaintiff told Whitaker how difficult it was to come into work where she felt bullied and intimidated. Plaintiff's SMF ¶ 135; Defendant's Responsive SMF ¶ 135.[61]

On April 29, 2010, Bruce Lane submitted a written statement to Hartshorne reporting that the plaintiff had shoved or pushed a box at him when he missed the box on the belt and it had gone past his truck. Defendant's SMF ¶ 107; Plaintiff's Responsive SMF ¶ 107.[62] Although Lane acknowledged that the plaintiff subsequently apologized, he described her behavior as

---

[59] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 102, does not require any change in the wording of this factual statement.
[60] The plaintiff's purported denial of a portion of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 103, is not responsive, and the defendant's objection to the response, Defendant's Objections ¶ 103, is GRANTED. Because the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.
[61] The wording of this sentence takes into account the defendant's qualification of this paragraph of the plaintiff's SMF. Defendant's SMF ¶ 135.
[62] The plaintiff's denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 107, goes only to details of the paragraph which I have not included in the text.

inconsistent with FedEx's teamwork philosophy. *Id.*

On July 7, 2010, the plaintiff and a co-worker, Judy Ellison, both grabbed a flower box on the belt. *Id.* ¶ 108. According to the plaintiff, Ellison "angrily" told the plaintiff to "let it go," and roughly pulled the box from her hands. *Id.* The plaintiff claims that she sustained a slight rope burn on her fingers as a result, and that Ellison "assaulted" her. *Id.*

Following the incident, the plaintiff observed Ellison discussing it with her manager, Farides, and interjected herself into the conversation, calling Ellison a "bald face liar." *Id.* ¶ 109.[63] Hartshorne and Whitaker obtained statements from the plaintiff, Ellison, and other co-workers in the area, and decided that there was not a sufficient basis upon which to discipline Ellison. *Id.* ¶ 110.[64] The plaintiff was not disciplined for this incident. *Id.* ¶ 111.[65] The plaintiff claimed that there was a "double standard" when Ellison was not disciplined for this incident. *Id.* ¶ 112. She asserted that someone could punch her in the face and get away with it. *Id.*

In July 2010, a co-worker, Michael Marchand, submitted a written complaint to Hartshorne alleging that on July 15 the plaintiff told him that he "better stop talking s—t" about her, while repeatedly poking him in the left shoulder. *Id.* ¶ 113.[66] Marchand also reported that the plaintiff had called him "a f--king liar" on many other occasions, insisting that he heard comments made about her by other employees. *Id.* Because the complaint was not timely and Marchand identified no independent witnesses to the incidents, Hartshorne did not issue

---

[63] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 109, does not require any change in the wording of this factual statement.

[64] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 110, is more properly termed a qualification and is not supported by the citations given to the summary judgment record. As a result, the defendant's objection to the response, Defendant's Objections ¶ 110, is GRANTED. The paragraph is deemed admitted.

[65] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 111, does not require any change in the wording of this factual statement.

[66] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 113, is not responsive, and the defendant's objection to the response, Defendant's Objections ¶ 113, is GRANTED. Because the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

discipline based on this complaint. *Id.*

On August 10, 2010, the plaintiff became upset that her co-workers were putting U.S. Postal Service document buckets on the sort belt, requiring her to interrupt her work to remove them. *Id.* ¶ 114.[67] The buckets are supposed to be stacked in a designated area in the warehouse and then returned to the Postal Service. *Id.* ¶ 115.[68] On this date, there were more Postal Service document buckets in the sort and there was a high volume of documents, due to the fact that freight had been delayed on the day before. *Id.* Because there were not enough FedEx buckets to handle the volume, Whitaker told the people on the document sort to use the extra USPS buckets to get through the sort and then send them down to be stacked and returned to the Postal Service. *Id.*

The plaintiff claims that Elston retaliated against her when he picked up the postal buckets and returned them to the belt after she had stacked and placed them near Penny's truck. *Id.* ¶ 116.[69] Several witnesses provided statements describing the plaintiff's use of profanity in referring to the two employees whom she believed were putting buckets on the belt, calling them "just a bunch of sick f--ks." *Id.* ¶ 117.[70]

On August 24, 2010, the plaintiff received a warning letter from Whitaker for violation of the defendant's Acceptable Conduct Policy 2-5 regarding use of "inappropriate language which was directed at other employees in a derogatory fashion" during the bucket incident. *Id.* ¶ 118.

---

[67] The plaintiff's qualification of this qualification of this paragraph establishes only that she believed that her co-workers were conspiring against her by doing this. Plaintiff's Responsive SMF ¶ 114.

[68] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 115, is more properly characterized as a qualification, which does not require any alteration to the factual statements made here.

[69] The plaintiff's qualification of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 116, does not require any change in this sentence.

[70] The plaintiff's purported denial of this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 117, is not responsive, and the defendant's objection to her response, Defendant's Objections ¶ 117, is GRANTED. Because the paragraph is supported by the citations given to the summary judgment record, it is deemed admitted.

Following her receipt of this letter, the plaintiff took a medical leave of absence. *Id*. ¶ 119. On November 15, 2010, the plaintiff filed her complaint in this action. *Id*. ¶ 120. On November 20, 2010, the plaintiff delivered her letter of resignation to Whitaker. *Id*. ¶ 121. The letter alleged that she was resigning as a result of "FedEx's failure to remedy the issues set forth in my Maine Human Rights Commission Complaint, as well as the retaliatory actions taken against me." *Id*. ¶ 121.

### III. Discussion

The complaint alleges violation of the Maine Human Rights Act on account of discrimination on the basis of sex (Count I); retaliation in violation of the Maine Human Rights Act after the plaintiff complained about gender discrimination (Count II); violation of the Maine Human Rights Act by discrimination on the basis of sexual orientation (Count III); and constructive discharge (Count IV). Plaintiff's Complaint for Sex Discrimination, Sexual Orientation Discrimination and Retaliation ("Complaint") (Document 1-1) at 3-5.

### A. Count I

Under the Maine Human Rights Act ("MHRA"), it is unlawful for an employer to discriminate against an employee on the basis of sex "with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment[.]" 5 M.R.S.A. § 4572(1)(A).

> Maine courts have relied on federal case law surrounding Title VII for the purpose of construing and applying the provisions of the MHRA. Accordingly, the Court will apply the same legal standard in considering whether the case survives summary judgment under . . . state law.

*Berry v. City of South Portland*, 525 F.Supp.2d 214, 227 (D. Me. 2007) (citations omitted). "Title VII" is Title VII of the federal Civil Rights Act, 42 U.S.C. § 2000e *et seq*., which has similar language at 42 U.S.C. § 2000e-2(a)(1). *Id*.

The plaintiff alleges a disparate treatment claim. That is, she contends that the defendant treated her complaints differently from the way in which it treated complaints made by male employees. Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 27) at 1. She does not contend that she has any direct evidence of the discrimination she alleges. Rather, she appears to agree, *id.* at 13, that the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to her claim, as it does in the absence of direct evidence when a motion for summary judgment is under consideration. This analysis requires a plaintiff to establish a prima facie case of gender discrimination. If the court finds that this has been done, the burden shifts to the defendant to present a nondiscriminatory reason for its challenged action. Finally, if that is done, the plaintiff is required to show that the stated reason is a pretext. *Id.*

The elements of a prima facie case are established when a plaintiff shows that (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) she was treated differently from similarly situated men. *Berry*, 525 F.Supp.2d at 228. Here, the defendant does not contest the first element of the test. Memorandum in Support of Defendant's Motion for Summary Judgment ("Motion") (Docket No. 20) at 15.

The defendant's discussion of the plaintiff's job performance is perfunctory. *Id.* Indeed, it characterizes the plaintiff's "work habits and general job performance" as satisfactory, yet apparently contends that "a consistent pattern of disruptive and disrespectful behavior" rendered her overall performance unsatisfactory. *Id.* The plaintiff does not respond directly, choosing rather to define the second element of the test as "whether Symonds was qualified to perform her job." Opposition at 13. She then asserts that the defendant does "not produce any evidence to

establish that Symonds was not qualified for her position[,]" so that she is entitled to go to trial. *Id.* The First Circuit has apparently used both formulations of the second element. *See Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001).

I will move on to the third element without resolving this apparent inconsistency, assuming for purposes of this analysis that the plaintiff has satisfied the second element of the test.

As to the third test, the defendant asserts that the plaintiff "never suffered an adverse employment action." Motion at 15. The plaintiff responds that "not promptly and thoroughly investigating her complaints in a fair and consistent manner as required by company policy" was an adverse employment action within the meaning of the test. Opposition at 14. That is incorrect.

> To be adverse, an action must materially change the conditions of plaintiffs' employ. *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996). . . . Material changes include demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees. *Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998).

*Gu v. Boston Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002) (internal quotation marks omitted). Failure to investigate complaints of discrimination cannot be considered an adverse employment action. *Notaro v. Fossil Indus., Inc.*, __ F.Supp.2d __, 2011 WL 5117104, at *8 (E.D.N.Y. Oct. 29, 2011); *Johnson v. ITT Corp.*, Cause No. 1:10-CV-142, 2011 WL 3875598, at *8 (N.D. Ind. Sept. 1, 2011).

The plaintiff comes somewhat closer with her alternate assertion that "issuing . . . unwarranted write-ups" constituted adverse employment action. Opposition at 15.[71] This must

---

[71] The plaintiff asserts that "Defendant concedes that unwarranted negative job performances are evidence of adverse actions[']" and this means that the defendant "in effect concedes that a triable issue of fact is present."

be a reference to the warning letters that were issued to the plaintiff.  The defendant points out that the letters "did not result in any decrease in pay or benefits," that the first warning letter was removed (presumably from her personnel file), and that she received a pay increase with two warning letters in her personnel file.  Motion at 16.

The plaintiff cites *Millea v. Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011), as support for her position.  Opposition at 15.  The Second Circuit did say, in that case, that a formal letter of reprimand could be a materially adverse action for purposes of the Family Medical Leave Act, which it found to be analogous in this context to Title VII, because it is "likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights[,]" even when the letter "does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently."  658 F.3d at 164.  Of course, in the case at hand, the plaintiff received a wage increase after the "write-ups" were placed in the file, and one of those was subsequently removed from her personnel file.

In applying *Millea*, Judge Koeltl of the Southern District of New York noted that a notice of discipline could be sufficiently adverse in the context of a Title VII claim if the plaintiff demonstrated that the notice "threatened severe consequences such as dismissal from service and loss of accrued annual leave, was placed in her personal history folder, and that she had to pay $3000 to settle the disciplinary action."  *White v. Department of Correctional Servs.*, __F.Supp.2d __, 2011 WL 4527320, at *9 (Sept. 30, 2011).  He also said that counseling memoranda and negative comment on the plaintiff's performance evaluation together "may not themselves have amounted to adverse actions[,]" but may have reached that level "in combination with the notice of discipline."  *Id*.  There is no such detailed evidence in the

Opposition at 15-16.  Assuming that the plaintiff intends to refer to negative job performance evaluations, she has not presented any evidence of any such action or actions by the defendant.

summary judgment record in this case, and no alleged combination of actions. *Millea* is distinguishable. The evidence in this case does not allow the drawing of an inference that the warning letters issued to the plaintiff would be likely to dissuade a reasonable worker in the plaintiff's position from exercising her legal rights. It certainly did not dissuade the plaintiff from doing so.

Accordingly, I conclude that the third element of the test for a *prima facie* showing of discrimination based on gender has not been established by the plaintiff, and the defendant is entitled to summary judgment on Count I for that reason.

I note that neither of the parties addresses the fourth element of the test, that the plaintiff was treated differently from similarly situated men, and for that reason I do not address it as a possible alternative basis for granting or denying the motion.

## B. Count II

Count II alleges that the MHRA was violated when the defendant retaliated against the plaintiff for "complain[ing] to management about gender discrimination." Complaint ¶¶ 27-31. To make a *prima facie* case of unlawful retaliation, a plaintiff must establish that she engaged in protected conduct and experienced an adverse employment action that was causally related to the protected conduct. *Mariani-Colón v. Department of Homeland Sec.*, 511 F.3d 216, 223 (1st Cir. 2007). Complaints about gender discrimination are protected activity.

The plaintiff identifies the following as complaints about gender discrimination: EEO complaints which were acknowledged by the defendant in letters dated September 4, 2009, and January 18, 2010; and a complaint to Smith in April 2009 about "anti-gay comments." Opposition at 18.

The plaintiff does not mention a complaint to Smith in April 2009 in her statement of

material facts. I assume that she means to refer to complaints made on March 18 and 19, 2009, although the recipient of the complaints is not identified. Plaintiff's SMF ¶¶ 20-21. In these complaints,

> Symonds accused Patchell of berating her with condescending remarks, that Symonds was a "female version of her husband," who[m] she described as "so annoying at times towards her," and "snapping" at Symonds to the point where it rose to the level of a "'hostile work environment[]"

and

> Symonds complained that the March 18, 2009 letter of discipline[] she received w[as] in retaliation for past complaints she had made. Symonds also complained that Patchell had engaged in the past in the same type of behavior of which Symonds was now accused and the behavior created a hostile work environment for Symonds.

*Id.*

Neither of these complaints, as described by the plaintiff, could reasonably be read to include a claim that she had been subjected to "anti-gay comments." Opposition at 18. Therefore, I will not consider this alleged protected activity further.

With respect to the first EEO complaint mentioned by the plaintiff, the September 4, 2009, letter to which the plaintiff refers, Plaintiff's SMF ¶ 65, was written in response to an EEO complaint filed by Jenkins, the "Human Resources Advisor," after the plaintiff had complained to him that a "double standard" applied to complaints made by female and male employees, as evidenced by the fact that she was disciplined for calling Debra Walton "a piece of work" while John Harvey was not disciplined for saying that the plaintiff was "gonna blow." Plaintiff's SMF ¶¶ 58, 63; Defendant's SMF ¶ 56, Plaintiff's Responsive SMF ¶ 56. But, Jenkins initiated the EEO complaint, after the plaintiff refused to complete an Employee Information Statement and chose not to request an EEO investigation. Defendant's SMF ¶ 57; Plaintiff's Responsive SMF

¶ 57.

Under these circumstances, I do not see how the plaintiff could reasonably be found to have engaged in protected activity in connection with the events giving rise to the September 4, 2009, letter. Indeed, the undisputed evidence is that she refused to engage in the activity that would have initiated an EEO complaint.[72]

The second and final EEO complaint mentioned by the plaintiff is apparently her December 7, 2009, letter to Tom Doherty, although it is possible that she means to include her formal complaint dated January 18, 2010, to the Maine Human Rights Commission as a third protected activity. Opposition at 18. She asserts that her complaint to Doherty "recounted the ongoing retaliation since she had filed the original complaint against Harvey, including the trash, the damage to her truck, the differential discipline and the spitting incident." Plaintiff's SMF ¶ 102. As the defendant points out, Defendant's Responsive SMF ¶ 102, the letter could not have included the "spitting incident," because, according to the plaintiff, that incident occurred on January 8, 2010, Plaintiff's SMF ¶ 107, or January 11, 2010, Plaintiff's Dep. at 140, both of which are after the date of her letter to Doherty. In fact, that incident is not included in the letter. Letter dated December 7, 2009, from Victoria Symonds to Tom Doherty (Exh. W to Docket No. 21-2). Similarly, there is in fact no mention of "differential discipline" in the letter. *Id.*

The trash incidents and the damage to the plaintiff's truck are mentioned in the letter. The problem for the plaintiff is that the letter is "protected activity" for the purposes of her retaliation claim only if, by the terms of her own argument, the actions complained of are based on gender discrimination. The letter categorizes the activity of which the plaintiff complains as

---

[72] While I do not rely on it, I note that the defendant has submitted evidence that, when the plaintiff complained to Jenkins on September 3, 2009, "of an alleged double standard as it related to discipline issued at the station[,]" Jenkins asked her "if the double standard was based on something such as gender, religion, or sexual preference, [and] she told him to decide[.]" Defendant's Responsive SMF ¶ 58.

"retaliation since my complaint on John Harvey." *Id.* at [2]. The plaintiff's complaint about Harvey concerned his statements and actions in August 2009, Plaintiff's SMF ¶¶ 37-47, 50-52, 60, none of which appear, as presented by the plaintiff, to involve gender discrimination; nor does the plaintiff herself assert that she reasonably believed those statements and actions to be based on her gender.[73] Nor, for that matter, does the plaintiff proffer any evidence that would allow the drawing of a reasonable inference to the effect that the alleged damage to her truck or the trash incident or incidents were themselves based on her gender, rather than on her strained personal relationships with certain co-workers. *See generally Tardif-Brann v. Kennebec Valley Community Action Program*, No. Civ. 04-132-B-S, 2005 WL 1712421, at *11 (D. Me. July 21, 2005).

Of course, filing a complaint with the Maine Human Rights Commission is protected activity, *see Lockridge v. University of Maine System*, Civil No. 08-136-P-S, 2009 WL 1106529, at *19 (D. Me. Apr. 23, 2009), and, in this case, that Maine Human Rights Commission complaint specifically alleges discrimination based on sex. Exh. BB to Docket No. 21-2

Even if the plaintiff were presumed to have included her Maine Human Rights Commission complaint in her catalog of protected activity, the plaintiff has not proffered evidence to meet the requirement that she experienced an adverse employment action that was causally related to the protected activity. All that she says on this issue is the following: "As discussed earlier, Defendant's double standard could certainly dissuade a reasonable employee from complaining." Opposition at 18. That earlier discussion, however, focused entirely on the defendant's alleged failure to "investigat[e the plaintiff's] complaints in a fair and consistent

---

[73] If a plaintiff takes the position that she reasonably believed that the actions of which she complained were based on her gender, and the discriminatory character of those actions is not readily apparent, the burden is on the plaintiff to clarify to the employer that she is complaining of unfair treatment due to her membership in a protected class and that she is not complaining merely of unfair treatment generally. *Mayers v. Emigrant Bancorp, Inc.*, 796 F.Supp.2d 434, 448 (S.D.N.Y. 2011) (and cases cited therein).

manner[.]" *Id.* at 14. The failure to investigate a complaint does not constitute an adverse employment action for purposes of a retaliation claim. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). The *Fincher* opinion adds a caveat: an employer's failure to investigate cannot be considered an adverse employment action "taken in retaliation for the same discrimination complaint." *Id.* However, the plaintiff proffers here no alleged adverse employment action as a result of the filing of her complaint with the Maine Human Rights Commission, because any alleged failure of the defendant to investigate could only have occurred *before* that complaint was filed.

There is accordingly no need to consider the causal element of the *prima facie* case of unlawful retaliation, or to proceed to the analysis that follows the finding of a *prima facie* case, and the defendant is entitled to summary judgment on Count II.

### C. Count III

Count III of the complaint alleges that the plaintiff's sexual orientation was a motivating factor in the defendant's discrimination against her. Complaint ¶¶ 32-36. The plaintiff offers the following as evidence "that her sexual orientation played a part in the discriminatory treatment of her by the Defendant": (1) the defendant took no action in response to her complaint "about Ro[u]rke making highly offensive gender-based comments to her partner"; (2) the defendant took no action in response to her complaint about anti-gay "comments" by Patchell; (3) the plaintiff was disciplined as a result of her disputes with Patchell and Walton, while they were not; and (4) "the Defendant['s] utter refusal to respond to the majority of Plaintiff's complaints is further evidence of disparate treatment of gays." Opposition at 19.

The plaintiff proffers no evidence that the defendant took no action in response to her complaint about gender-based comments directed at her partner *because the plaintiff is gay*. Nor

does she proffer evidence that the defendant took disciplinary action in response to a complaint about comments directed at a third party when the complainant was not gay, which would seem to be a necessary element of a claim of disparate treatment. The plaintiff does assert, based only on her own perception, that "[i]t was well know[n] to the staff and management [of the defendant] that [the plaintiff and her partner] were partners," Plaintiff's SMF ¶ 4, which the defendant does not deny, Defendant's Responsive SMF ¶ 4, but if that were enough to establish a *prima facie* case of unlawful discrimination based on sexual preference, every gay employee could bring an action for violation of the MHRA whenever an employer took any adverse action against him or her. The MHRA cannot be read so broadly.[74]

With respect to the second allegation, the plaintiff provides evidence of only one "anti-gay" comment. She says that Patchell "would use the offensive term 'that's so gay' in front of Symonds." Plaintiff's SMF ¶ 9. The comment was made, according to the plaintiff, "[p]rior to March 17, 2008." *Id.* The plaintiff filed her complaint with the MHRC on January 28, 2010. Plaintiff's SMF ¶ 112. Accordingly, this claim is time-barred. 5 M.R.S.A.§ 4611.

The allegation that the plaintiff was disciplined for becoming involved in disputes with Patchell and Debra Walton while they were not depends on at least two necessary facts: that Patchell and Walton were heterosexuals and that the action or actions for which the plaintiff was disciplined were equal or essentially similar to those in which Patchell and Walton had engaged. The plaintiff cites evidence of neither and, so far as I can discern, provides no evidence that could reasonably be construed to establish either indirectly.

Finally, the plaintiff's contention that the defendant's alleged refusal to respond to the

---

[74] In addition, the alleged offensive comments were made to Cosgriff, according to the plaintiff, in September 2008. Plaintiff's SMF ¶ 5. The plaintiff's complaint was filed with the MHRC on January 28, 2010. *Id.* ¶ 112. The applicable statute of limitations requires that such claims be filed within 300 days of the event. 5 M.R.S.A. § 4611. The plaintiff's claim as to this event is thus time-barred.

majority of her complaints is evidence, standing alone, of its "disparate treatment of gays," Opposition at 19, is simply inadequate to establish any discriminatory animus on the part of the defendant. If it were sufficient, any employee who disagreed with an action or inaction of his or her employer and who belonged to a protected group could bring and prove a claim against the employer for unlawful discrimination merely by so characterizing that action or inaction. That, again, is far too broad a construction of the MHRA.

In the end, the plaintiff offers nothing substantive beyond a "stray remark," albeit a clearly offensive one, by one co-worker to support her claim of unlawful discrimination based on sexual orientation. A "stray remark" may be considered as evidence of discriminatory animus but is "normally . . . insufficient to prove [an] employer's discriminatory animus" standing alone. *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13 (1st Cir. 1998). Indeed, the First Circuit has noted that a "possibly" biased remark by a co-worker who was not the plaintiff's supervisor is "irrelevant" to consideration of a claim of unlawful discrimination, and that stray remarks may be considered evidence of bias only in combination with other evidence and if they were temporally close to the adverse employment action. *Douglas v. J. C. Penney Co.,* 474 F.3d 10, 15 (1st Cir. 2007). The plaintiff's evidence in this case suffers from all of these infirmities.

On the showing made, the defendant is entitled to summary judgment on Count III.

### D. Count IV

Count IV, the final count of the complaint, alleges constructive discharge. Complaint ¶¶ 37-40. The complaint does not cite the legal authority pursuant to which the claim is brought, but it is recognized under the MHRA, *King v. Bangor Fed. Credit Union*, 611 A.2d 80, 82 (Me. 1992), and I assume that is the legal authority that the plaintiff wishes to invoke. Such claims require a plaintiff to show that she had no reasonable alternative to resignation due to intolerable

working conditions.  *Id.*

The plaintiff's entire argument in support of this count of her complaint, other than the citation of authority, is the following:

> In the present case, a triable issue of fact exists based on the totality of the evidence detailing management's clear intent to not respond effectively to Symonds' complaints [about] the ongoing retaliation from some of her co-workers.  The situation eventually became so bad for Symonds, that a few weeks before she left, she told Hartshorne that if someone punched her in the face, she did not believe management would do anything.  Obviously, the situation had reached the point [] where Symonds had no choice but to resign.  Accordingly, a triable issue of fact exists on the issue of constructive discharge.

Opposition at 20.

The first problem with the plaintiff's argument is that it assumes that it is her subjective view of her work environment that governs this claim.  It is not.  The legal standard, quoted above, is an objective one.  *Paquin v. MBNA Marketing Sys., Inc.*, 233 F.Supp.2d 58, 68 (D. Me. 2002).

Further, "to prove a retaliatory constructive discharge, a plaintiff must establish that her work environment was hostile."  *Id.*  "In order to prove a constructive discharge, a plaintiff must show that the work environment triggering the departure was more severe and pervasive than the minimum required to prove a hostile working environment."  *Id.*  The plaintiff here points to no evidence that would allow a reasonable factfinder to conclude that this standard has been met, and any attempt on her part to do so would be undermined by her own assertion that her complaint "does not allege such a [claim]."  Opposition at 17 n2.

The absence of even an attempt by the plaintiff to show that gender-based, or sexual-orientation-based, discrimination "polluted the workplace" means that the defendant is entitled to summary judgment on Count IV.  *Ahern v. Shinseki*, 629 F.3d 49, 59 (1st Cir. 2010).

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of December, 2011.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge